### NEWHALL v. APPLETON et al.

(*Superior Court of New York City, General Term.*  January 6, 1890.)

EVIDENCE—RELEVANCY—MEANING OF TERM.

> In an action on a contract, whereby defendants employed plaintiff to canvass subscriptions for their publications, and agreed to pay a certain sum for every "order" he obtained, defendants proved the meaning of the term "order," as used in the trade of book canvassing, and that the meaning was the same in 1877 and 1878. A witness for plaintiff stated that from 1878 or 1879 he had been familiar with the trade meanings of the business, but did not know what they were in November, 1877, when the contract was made. He was then asked, "From what date do you know them?" and, "Do you know the customs and trade meanings in that business now?" *Held,* that the questions were improperly excluded, as whatever was circumstantial evidence of the meaning of the term "order" was admissible.

Appeal from judgment on report of referee.

Action by George T. Newhall against William H. Appleton and another. Plaintiff appeals from a judgment entered in favor of defendants.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*W. W. Badger,* for appellant.  *Edward W. Paige,* for respondents.

SEDGWICK, C. J.   The action was brought upon a contract, as alleged in the complaint, by which defendants employed the plaintiff as a canvasser to obtain subscriptions or orders for serial publications, and agreed to pay a specified sum of money "for each and every order he obtained." The action is the same that is reported in 114 N. Y. 140, 21 N. E. Rep. 105; 102 N. Y. 133, 6 N. E. Rep. 120; 49 N. Y. Super. Ct. 238. On the present trial the defendants properly were allowed to prove that the term "order" had a certain meaning in the trade of book canvassing. The defendants' agent who made the contract with plaintiff had testified that the promise was to pay for "good orders." The testimony to prove the meaning was of the following kind. Rowe, a witness for defendant, was asked by their counsel: "Do you know whether the words 'so much an order' in that business have a settled meaning?" The answer was: "Yes. *Question.* Please state what that meaning is. What does the expression '$4 an order' mean? *Answer.* It means $4 for each order that proves good. *Q.* And what do you mean by that? *A.* I mean that the order shall be," etc. "*Q.* And is that custom uniform in the business? *A.* I have never known an exception to it. *Q.* For how many years? *A.* Well, for at least 15 years. *Q.* And the custom that you speak of was the custom in 1877, as it is now? *A.* Yes. *Q.* And it always

has been uniform since your connection with the business? *A.* Yes." Other testimony of a like kind was elicited by the defendants. The present meaning was shown, and that the meaning was the same in 1877 and 1878.

To meet this kind of testimony, the plaintiff proved by a witness that from 1878 or 1879 he had been familiar all the time with the customs and trade meanings of the business. He, however, did not know what the custom and trade meanings were in November, 1877, when the contract was made. Then the plaintiff asked: "From what date do you know them?" This was excluded as immaterial; and for a like reason was excluded the further question: "Do you know the customs and trade meanings in that business now?" If the question has been answered, the referee might have been persuaded that the meaning which defendants claimed existed in 1877, in November, had no existence from a time, shortly after that date to the present time. Although the point of the issue as to this subject was the meaning at the time of the contract, yet what ever was circumstantial evidence as to that meaning was admissible, especially in a case of contradictory testimony. If the meaning was in November, 1877, as described by defendants' witnesses, with the prevalence, generality, fitness to the kind of trade, and duration they attributed to it, then a referee might find it must have continued down to at least 1879. If, then, it were shown that there was no such meaning in 1879, there might be validly a doubt of whether there was that meaning in November, 1877. It would be the case of determining the existence of a cause by proof that certain things were its effects. It would be relevant to show that the effect had not occurred. In my opinion, the question excluded should have been admitted, and that for this reason there should be a new trial.

It was relevant to the issue to investigate whether or not the defendants had made the proper deliveries of the serials to the subscribers, as this was a condition precedent of the subscribers paying for 10 numbers, or whatever number, when paid for, was the test of the subscription, being the kind of order intended by the contract.

I do not find, from anything upon record, that it is correct to attribute to the referee the impropriety of intention and action charged by the learned counsel for the appellant. I may add that the only subject before the court is the character of his ruling. A slur is easily made upon an absent person, and a court especially should not indulge in one. As I understand the testimony of the plaintiff, it sustains the finding of the referee that the parties did not make the guaranty that is averred in the complaint. The judgment should be reversed, the order of reference vacated, and a new trial had, with costs to abide the event.